## TOUSEY v. HASTINGS.

(Supreme Court, Appellate Division, Second Department.  June 12, 1908.)

1. WILLS—CONTRACTS TO BEQUEATH—EVIDENCE.
   Evidence *held* not sufficient to show an oral agreement by a decedent that at her death plaintiff should become owner of her interest in a business.

2. SPECIFIC PERFORMANCE — CONTRACTS ENFORCEABLE — MUTUALITY AND CERTAINTY.
   A contract will not be specifically enforced, unless it is mutual, certain, and definite, founded on an adequate consideration, and established by the clearest and most convincing evidence.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 56–60. 89–99.]

3. WILLS—CONTRACTS FOR TESTAMENTARY DISPOSITION—SUFFICIENCY OF EVIDENCE.
   An oral agreement to make in effect a testamentary disposition of property will not be specifically enforced solely upon evidence of statements made by decedent in casual conversations with disinterested third persons.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 165.]

Appeal from Special Term, Westchester County.

Action by Sinclair Tousey against George Gordon Hastings, as executor of Rosalie Tousey Hastings, for specific performance of an alleged oral agreement by testatrix to make in effect a testamentary disposition in plaintiff's favor.  Judgment for plaintiff, and defendant appeals.  Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

Morgan J. O'Brien (Theron Davis and Edwin L. Kalish, on the brief), for appellant.

James M. Hunt (George W. Elkins, on the brief), for respondent.

MILLER, J.  This is a suit for specific performance of an alleged oral agreement by the defendant's testatrix to make in effect a testamentary disposition in favor of the plaintiff.  A publishing business was owned by the plaintiff's brother, Frank Tousey, at the time of his death in September, 1902.  At that time the plaintiff was the manager of the said business, and there is evidence tending to show that its then prosperous condition was due in large measure to his management.  .Said Frank Tousey left all of his property to his widow, the said testatrix, who shortly after his death gave a half interest in said business to the plaintiff; and it was thereafter, and until June, 1905, conducted as a copartnership.  On June 3, 1905, a corporation was organized, with a nominal capital of $50,000, and said business was transferred to it by the said copartners in exchange for 496 shares of its capital stock.  To the plaintiff and said testatrix 249 shares were issued, respectively, and 1 share to each of two other persons to qualify them as directors.  On June 9, 1905, at a meeting of directors, the plaintiff and said testatrix were respectively elected president and vice president, and a salary of $30,000 was voted to each.  Soon thereafter said testatrix went to Europe, where she remained, except for a

brief time, until her death on the 28th day of December, 1906. The trial court found that on or about said 9th day of June, 1905, said testatrix, in order that she might be relieved of her duties as vice president and director aforesaid and be free to take said European trip, entered into a contract with the plaintiff whereby she agreed that, if he would conduct the affairs of said corporation so that she might receive said salary of $30,000 a year, without being obliged to devote any time or attention to said business, she would make such provision that upon her death said 249 shares of stock owned by her should become the property of the plaintiff. She received said salary until her death. At the time said contract is alleged to have been made she was contemplating marriage to the defendant. That marriage occurred July 12, 1906. On August 1, 1906, she made a will naming the defendant as her residuary legatee; and she died without making any provision such as she is alleged to have promised the plaintiff to make.

The only evidence in the case tending to establish the making of said contract consists of the testimony of two witnesses respecting statements made by said testatrix to them. No witness to said contract is produced. At the time it is said to have been made she made no secret of her contemplated marriage. The plaintiff asserts that upon the faith of said promise he rendered service which he would not otherwise have performed, and allowed said testatrix a larger share of the earnings of said corporation than he otherwise would have allowed; and yet he trusted entirely to chance admissions, which he had no reason to expect would be made, for proof of a contract to give him property capable of yielding an income of $30,000 a year. It may be said that he trusted to the good faith of said testatrix; but in view of the uncertainties of life, and the possibility of changed conditions inducing a change of intention, the absence of any direct evidence of the contract, documentary or otherwise, at least strongly suggests that none was made. It appears that the corporation was organized to relieve said testatrix of personal liability, and there is nothing in the evidence to suggest that there was any change in the method of conducting the business or dividing the earnings after its organization. The plaintiff had been given a half interest in the business, as we may assume to reward him for his efficient management of it, and he was doubtless quite willing to manage it and to divide the profits with his donor, his brother's widow. He had managed the business before his brother's death for a salary of $10,000 a year.

Said witnesses, whose testimony is relied upon to establish the contract, appear to have been disinterested and worthy of credit; but when we come to scan their testimony we find abundant reason for the caution with which courts receive that class of evidence, especially in proof of contracts like the one involved in this case. The rules governing this class of cases have become well established and need not be restated. We have recently had occasion to consider the subject. See Butcher v. Geissenhainer (decided March 11, 1908) 109 N. Y. Supp. 159. That, like Roberge v. Bonner, 185 N. Y. 265, 77 N. E. 1023, was an action at law; but still we held upon the authorities cited that evidence, which would ordinarily suffice, did not present a question of fact.

According to the testimony of the witness McGrew, the testatrix said that she had a perfect understanding with the plaintiff; that she was to have $30,000 a year as long as she lived, or as long as the business continued; that the plaintiff had done well, and was entitled to credit; that no man whom she might marry would interfere with the business or her arrangement with the plaintiff. Said witness inferred that the property was to belong to the plaintiff after the death of the testatrix; but that was because the testatrix said that no one whom she might marry should interfere. The testatrix said to the witness Kemble, according to his testimony, that she had had the business incorporated, because that would be safer; that she was to have $30,000 a year as long as the business warranted; that if it did not continue profitable the plaintiff was to notify her and she would retrench; that the plaintiff had built up the business, and the Tousey people were entitled to it; that if anything happened to the plaintiff the business would go on just the same; that if anything happened to her he was to have the entire business; that she was satisfied to get $30,000 a year as long as she lived; that the business belonged to the Touseys, and at her death there was no reason why the Tousey family should not have it. Said witness was recalled after a recess and testified that the testatrix said that her agreement with the plaintiff was that if he provided her with $30,000 a year during her lifetime he should have entire control of the business at her death, or should have the entire business. The witness was not certain which expression was used, but the impression created in his mind was that the plaintiff was to have the business.

I have thus given an epitome of the testimony relied upon by the plaintiff, to show how unreliable such evidence is even when given by witnesses entitled to credit. Said witnesses had no interest in the subject of said conversations, and no reason to note carefully or remember accurately what was said. We may assume that they have truthfully given the conversations as they understood and recall them. But we cannot tell, and they do not pretend to say, what words the testatrix used. How much is inference, and how much recollection, neither we nor the witnesses can tell. In casual conversation one is not apt to be as precise and accurate in statement as when contracting or making statements to be acted upon by another. The testatrix may not have expressed her intended meaning plainly, what she said may have been misunderstood, and the witnesses may not have remembered accurately or reproduced correctly even their own original impressions. Had said witnesses been dishonest, they would doubtless have testified to a precise statement of the testatrix that a definite and certain contract was made; but, being honest, they have given their best recollection of the impressions produced on their minds by casual conversations. The testatrix had made an arrangement whereby she was to receive $30,000 a year. The plaintiff had control of the business. The testatrix doubtless intended that no one should interfere with said control. She felt grateful to the plaintiff for his successful management, and may have intended to leave him her interest upon her death. So much the testimony suggests; but it is not probative of a definite and certain contract to make a testamentary disposition. As to what she should do

with her interest, the testatrix may have meant only to express an intention on her part, which she had possibly communicated to the plaintiff; and it is very uncertain whether such intention was to secure the plaintiff in control of the corporation or to give him her interest in it. At any rate, the uncertainties are so great that the testimony utterly fails in the probative force necessary to establish the alleged contract or to justify the relief granted. The surrounding circumstances cast doubt on the making of the alleged contract. It belongs to a class of contracts which the courts have repeatedly said are justly subject to suspicion and can only be established by the clearest and most convincing evidence. The plaintiff is in a court of equity, asking for a relief which is never granted except a mutual, certain, and definite contract, founded on an adequate consideration, is established by the clearest and most convincing evidence. Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332; Mahaney v. Carr, 175 N. Y. 454, 67 N. E. 903; Hamlin v. Stevens, 177 N. Y. 47, 69 N. E. 118. The courts have repeatedly characterized evidence of statements made in casual conversations to disinterested third parties as weak; and we think, therefore, that such evidence, standing alone, can never suffice to justify a decree of specific performance of a contract like that involved in this case.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur.