(71 Misc. Rep. 305.)

WALLACE et al. v. WALLACE et al.

(Supreme Court, Special Term, New York County. December, 1910.)

Specific Performance (§ 86*)—Mutual Wills.

Where a contract between a husband and wife to make mutual wills is clearly and definitely established, either by direct evidence or by circumstances warranting an inference that it was made and executed by one of them, equity will enforce specific performance by the other.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 223, 224; Dec. Dig. § 86.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Walter T. Wallace and Florence Wallace Cunningham against Howard Gurdon Wallace, individually and as surviving executor under a will of Juliet Wallace, deceased, and others. Judgment for plaintiffs.

Action for the specific performance of an alleged agreement to make final disposition of property by will.

Anson Beard, for plaintiffs.
Clifford Couch, Franklin Couch, and Smith Lent, for defendants.

BLANCHARD, J.   This action is brought to enforce the provisions of an alleged antecedent oral agreement, entered into between James P. Wallace and his wife, Juliet Wallace, whereby they bound each other and the survivor of them to a final disposition of their property.   It is agreed that James P. Wallace and his wife, Juliet Wallace, on May 18, 1894, executed mutual wills, similar in terms, wherein it was provided that the property of the one who predeceased the other should go absolutely to the survivor; and, in the event that the testator or the testatrix should survive the other, their property was to be divided into sixteen equal shares or portions, eight of which were to go to his nieces and nephews and eight to her nieces and nephews.   It is further agreed that these nieces and nephews were their next of kin; their own children having died without issue long prior to 1894.   It is further agreed that James P. Wallace died on the 18th day of January, 1897, and thereafter, on May 2, 1902, Juliet Wallace, who at the time was about eighty-two years of age, executed a last will and testament, whereby, after making various specific bequests, she left the rest, residue, and remainder of her estate to Howard Gurdon Wallace, thereby materially altering and consequently revoking the previous will which was executed in 1894.   The vital question to be decided in this case is whether the evidence is sufficient in law to prove the agreement alleged by the plaintiffs.

The mere making of mutual wills is insufficient to indicate a binding contract, irrevocable after the death of either party, even though the provisions in both wills are identical.   Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265.   The character of the evidence necessary to prove an agreement such as is alleged is clearly stated in the case cited above as follows: ·

"But equally would it be the duty of a court of equity to refuse that relief where the agreement sought to be given effect was not certain and definite. Clearly it should hesitate to assume the grave responsibility of implying an agreement whose existence depends upon circumstances inconclusive in their nature and permitting an inference either way.   It is not essential to the intervention of equity, in order to prevent the accomplishment of fraud, that an agreement should be established by direct evidence.   It may be established from such facts and circumstances as will raise an implication that it was made, and may have reinforcement from the evidence of the conduct of the parties at the time and subsequently.   But, concerning as it does the statutory right of a person to dispose of his property after his death by a last will, the court should refuse to interfere unless the agreement depended upon for the award of the relief demanded has been clearly and definitely established.   The law permits a person to dispose of his property at his pleasure. He may make a valid agreement binding himself to make a particular testa-

mentary disposition of his property, if it be a reasonable one, and he may validly renounce the power to revoke his will in the absence of fraud or deceit. Equity will enforce such an agreement when well and fairly founded, and will not suffer him to defraud and to defeat his obligation by another will. But the court must have full and satisfactory proof of the agreement. Johnson v. Hubbell, 10 N. J. Eq. 332 [66 Am. Dec. 773]."

The evidence in the case at bar is direct as regards statements made by James P. Wallace and his wife, Juliet Wallace, and can be implied from the circumstances surrounding the acquisition of their joint properties and the position they would naturally assume in the disposition of it upon their deaths. Briefly stated, James P. Wallace and his wife for many years lived in Brooklyn, where they took an active and interested part in the affairs of their parish, were surrounded by a large circle of friends and from time to time visited by their relatives, of whom there was a comparatively large number. James P. Wallace was engaged in the produce business, and was at one time president of the Produce Exchange. During his life he had amassed a large fortune, variously estimated from $700,000 to $1,000,000. During the latter years of his business life, two of his nephews, who in both of the wills executed in 1894 were named as legatees and as possible executors, were associated with him and assisted him in the acquisition of his property. From time to time he made gifts to his wife of property of various kinds prior to the execution of the wills in 1894. In 1894, or thereabouts, as has been testified, a family council was called, and those attending were informed as to the disposition which was to be made of his and his wife's property, to which there appears to have been no protest. Just prior to 1902, the date of the execution of Mrs. Wallace's subsequent will, the defendant Howard Gurdon Wallace became a resident in her home and took an important part in the conduct of her business affairs. As he himself testified, he received a power of attorney from her; and, although he did not admit that he was her chief and sole agent, it is difficult, considering the services he rendered for her, to escape the conviction that he occupied a dominant position in her affairs. It is proper to note, in drawing inferences, that all the circumstances which might have tended to influence Mrs. Wallace in the drawing of her subsequent will existed at the time of her husband's death, with the exception of the close association in an advisory capacity of the residuary legatee. It is reasonable to believe that at her advanced age she would not have waited a period of five years to alter her will had she believed she had not already irrevocably disposed of her property.

It was considered, up to the time of the decision of Edson v. Parsons, supra, decided subsequently to the death of James P. Wallace in 1897, that the execution of mutual wills, apart from any intrinsic evidence of an agreement, constituted a binding contract, irrevocable after the death of either person executing the wills. Nevertheless, the similarity in terms of mutual wills may be regarded as some evidence to show the existence of a contract such as is sought to be established. In the case at bar it is not necessary, however, to rely solely upon inferences, since there appears to be ample testimony to

support the existence of such an agreement. If the testimony of Mr. Hoyt and Miss Whitcomb is to be believed—and from their demeanor and manifest sincerity on the witness stand I am prepared to believe their statements—the mutual wills resulted after due deliberation and agreement and consultation with prospective legatees and were made in contemplation of a final disposition of the property. The evidence of Mr. Hoyt, which was not materially shaken on cross-examination and was collaterally supported, shows that he visited James P. Wallace and his wife immediately prior to the execution of the wills. At the time of the visit they stated that they had agreed to a disposition of their property, and that, although they had assisted him in the past and intended to assist him as long as they lived, yet they had nearer relatives, and they felt he should not expect to be remembered. He testified that at that time they stated to him that they had agreed to a final disposition of their property after consultation between themselves, and that, after considering all the reasons which should influence them in the disposition of it, they had agreed to execute mutual wills to carry out these purposes. It is significant upon the credibility of his testimony that under Juliet Wallace's subsequent will he became a legatee; and, although he admitted that he had been assured that he would lose nothing should the plaintiff be successful in the action, yet he would put in peril an assured sum in exchange for an indefinite promise. The testimony of Miss Whitcomb also clearly established the existence of an agreement, as evidenced by statements made by them to her and by Mrs. Wallace after her husband's death. In addition to testifying to statements which they had made prior to the execution of the mutual wills, which was substantially the same as those made by Mr. Hoyt, she further testified that after Mr. Wallace's death Mrs. Wallace stated to her that she was glad that the disposition of the property had been settled for all time. Her testimony was also not materially shaken on cross-examination. The character of these two witnesses, together with their demeanor and manner of testifying, appears to leave no doubt as to the truth of their testimony. In addition, the testimony seems adequate to indicate the existence of the agreement which it is sought to prove. Both these witnesses were people of mature years and unblemished reputation, and no evidence challenging the truth of their statements or indicating bias was produced.

Under all the circumstances, it seems impossible to arrive at any other conclusion than that these two old people, mindful of the uncertainty of life, had finally agreed upon a disposition of their property which gave it to those who were the natural objects of their bounty; that they executed mutual wills giving their property to each other, with the intent that after the death of either of them the survivor should carry out the terms of a contract which was evidenced by the execution of mutual wills. I think the proof of the alleged agreement is clear and definite, that the agreement was reasonable, well within the rules stated in Edson v. Parsons, supra, and I am convinced that the plaintiffs are entitled to the relief demanded in the complaint.

Judgment accordingly.