### WILDMAN v. JONES.

(Supreme Court, Appellate Division, First Department. May 17, 1912.)

1. SPECIFIC PERFORMANCE (§ 121*)—CONTRACTS TO BE ENFORCED AFTER DEATH —EVIDENCE TO ESTABLISH.

A contract by which a person agreed to leave money by will must be established by clear and satisfactory evidence to warrant its enforcement after death.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

---

2. SPECIFIC PERFORMANCE (§ 121*)—CONTRACTS ENFORCEABLE—EVIDENCE—SUF-
    FICIENCY.
        In an action for specific performance .of a contract to leave money by
    will, evidence *held* insufficient to establish the agreement, or if there
    was an agreement, that it was supported by a consideration.
        [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–
    395; Dec. Dig. § 121.*]
3. SPECIFIC PERFORMANCE (§ 123*)—CONTRACTS TO BE ENFORCED AFTER DEATH
    —EVIDENCE TO ESTABLISH—QUESTION FOR COURT.
        In an action to enforce a contract to leave money by will, whether the
    evidence is of that clear and convincing quality required to establish the
    contract is for the court; the weight of such evidence, if present, being
    for the jury.
        [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 397–
    399; Dec. Dig. § 123.*]

Appeal from Trial Term, New York County.

Action by Joseph E. Wildman against Frank C. Jones, as executor.
From a judgment for plaintiff and an order denying a motion for
new trial, defendant appeals. Reversed, and new trial granted.

See, also, 131 App. Div. 935, 116 N. Y. Supp. 1150.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

Clarence G. Galston, of New York City, for appellant.
John H. Hazelton, of New York City, for respondent.

SCOTT, J. This is one of the attempts so often made, but so sel-
dom successful, to recover a sum of money from a decedent's estate
upon the plea that the decedent during his lifetime had made a con-
tract to include in his will a legacy to the claimant. The action
has been thrice tried. On the first trial the jury disagreed. On the
second the plaintiff had a verdict, which was set aside by the trial
justice, and his order to that effect affirmed by this court. The third
trial has again resulted in a verdict for plaintiff, and the trial jus-
tice denied defendant's motion for a new trial. From the judgment
and order the defendant appeals.

[1] The rules to be applied in weighing the evidence in support
of claims like the present have been frequently stated by the Court
of Appeals, and have recently been reiterated in Holt v. Tuite, 188
N. Y. 17, 80 N. E. 364, as follows:

"I next pass in order to a consideration of the rules by which we are to
determine the weight and force of the evidence and facts which have been
recapitulated. Those rules must be reasonably familiar, for recently they
have been formulated by this court·after much consideration and with delib-
eration. They have emphasized with increasing decisiveness the caution with
which claims of the class to which the present one belongs must be scrutinized,
and the high order of proof by which they must be sustained. The court has
felt compelled to do this by the frequency with which such claims were aris-
ing, and in view of the dangerous opportunities afforded through them of
fraudulently sweeping the property of a dead person away from those to
whom it would naturally pass. These rules must be general in their appli-
cation, and may not be too much shifted in any particular case to meet the
necessities and equities, real or fancied, of that particular case. In Shakes-
peare v. Markham, 72 N. Y. 400, 403, it was said that such contracts 'are prop-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erly regarded with grave suspicion by courts of justice, and should be closely scrutinized, and only allowed to stand when established by the strongest evidence.' In Hamlin v. Stevens, 177 N. Y. 39–48 [69 N. E. 118], it was said: 'While such contracts are sometimes enforced by the courts, it is only when they have been established by evidence so strong and clear as to leave no doubt and when the results of enforcing them would not be inequitable or unjust.' In Rosseau v. Rouss, 180 N. Y. 116, 120 [72 N. E. 916], in speaking of an alleged contract sustained by many equitable circumstances and directly testified to by one interested witness who was corroborated by three witnesses testifying to admissions made by the decedent to the effect that he made a contract resembling the one sworn to, the court said: 'Thus, the evidence relied upon to establish the contract is, first the testimony of the mother, who tried to swear $100,000 into the pocket of her own child; and, second, the testimony of witnesses who swear to the admissions of a dead man. The former is dangerous, the latter is weak, and neither should be acted upon without great caution. We have repeatedly held that such a contract must not only be certain and definite, and founded upon an adequate consideration, but also that it must be established by the clearest and most' convincing evidence. * * * ' We have been rigid and exacting as to the sufficiency of the evidence to establish them (such contracts), and have condemned the proof thereof 'through parol evidence given by interested witnesses,' as 'such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises.' We have declared that they 'should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses.' "

Tested by these rules, the evidence in behalf of plaintiff falls very far short of establishing satisfactorily the contract upon which he seeks to recover.

[2] The decedent was a Roman Catholic priest, possessed of some property, the amount of which does not appear. The plaintiff, at the time the contract is alleged to have been made, was a lad about 18 years of age living with his mother at Washington, D. C. Decedent, although not related to plaintiff, seems to have been quite intimate with his family, and evidently was then, and for some years afterwards, much attached to plaintiff. The only evidence of the alleged contract is that given by plaintiff's mother, who testified as follows:

"A. My son Joseph met Father Jones in April, 1892, who came to my house to see him, and also invited him out to dinner. Then, in May, he gave him some work to do for him, and seemed to be very much pleased with it, and asked him' to work for him altogether, and said he would do better by him than what he was doing. About the middle of July my son asked for a settlement, and he said he wanted to adopt him and have him take his name, to which I objected, and he continued to talk about adopting Joseph until September, when he came down to my house, and said: 'As the parents will not let me adopt you, I will give you money for' your clothes, and provide for you in my will the sum of $6,000, provided you will look after me whenever I want you to while I am in America, or at any time.' Joseph said: 'If you will let me do other work whilst you are away, or when you do not want me.' Father Jones said: 'That is all right. It is perfectly satisfactory.' Then in 1893, November 2d, I think it was, he came down to my house, and told me that he had made his will, and that Joseph had gone with the will to have it registered to George McCaffray, the executor. He said that he had left in this will $6,000 to compensate him for his work. At the same time, the same day, he made the remark to me that it was the hand of Providence that led Joseph to him, and that he could not do without him."

There is other evidence of relatives and friends of the plaintiff to the effect that they had heard decedent express an intention of providing for plaintiff, and there is some evidence that at one time decedent did execute a will in which he left a legacy of six thousand dollars to plaintiff, but no witness is produced, save only the mother, who was able to, testify that he or she had ever heard decedent mention any agreement to provide for plaintiff. It is obvious that there is a vast difference between an intention to perform an act and an agreement to do so, and the expression of such an intention, although often reiterated, is far from persuasive proof of the existence of a valid, binding contract. Many letters were read in evidence written by decedent to plaintiff. They are full of expressions of affection and interest, but it is very significant that in no one of them is there any reference to any agreement, or even of any fixed intention of providing for plaintiff by will. The distinction between the declaration of an intention to make a will in a certain way, and a definite agreement to do so, while of the greatest importance when it comes to proving a claim like the present, might easily not be perceived by a layman, unaccustomed to considering nice distinctions in language, and it may well be, and probably is the fact, that what was said to plaintiff's mother, and what she now recollects as a positive agreement, was nothing more than what the decedent expressed to other witnesses, to wit, an intention to leave plaintiff a legacy, an intention which was evidently entertained at one time, but which decedent had a right to abandon, and did afterwards abandon. The evidence that any such contract was ever made does not therefore conform to the requirements laid down by the Court of Appeals in like cases.

The evidence is also unsatisfactory respecting the consideration for the alleged contract. As recited by the mother, the consideration for the gift was thus expressed by the decedent:

"I will give you clothes and provide for you in my will the sum of $6,000, provided you will look after me whenever I want you to while I am in America, or at any time."

Clearly this proviso called upon plaintiff to hold himself at decedent's disposition for the full term of the latter's life, and if at any time he failed to comply with the conditions, or incapacitated himself from doing so, the consideration failed, and the decedent was released from his promise, and, under the circumstances, it rested with plaintiff to show that he had fully carried out the contract on his part. The alleged contract was made in 1892, and the decedent lived until 1902. There is evidence that between 1892 and 1897 the plaintiff acted as a sort of secretary, valet, and companion for decedent whenever the latter was in this country. There is no evidence that he so acted after 1897, or that he had, after that date, any relations with decedent, and no reason or excuse is given why he so ceased to act. It is impossible to say that the contract alleged in this case has been established by the "clearest and most convincing evidence," or that there is any evidence to establish it except testimony of the character that has been condemned by the Court of Appeals as insufficient. For the palpable deficiencies in the evidence the

complaint might well have been dismissed at the trial, and certainly · no verdict should be allowed to stand.

[3] "While it is true that a claim against a decedent's estate is as meritorious as any, a different rule of proof is required in cases which are justly the object of suspicion, easily fabricated and with difficulty disproved. ·The plaintiff's case is burdened from the start with that suspicion, and it must be considered by the court in determining whether there is a case for the jury. While it is true that it is the province of the jury to weigh the testimony, preliminary to that the court must determine as a matter of law whether the rule of proof required has been complied with." Butcher v. Geissenhainer, 125 App. Div. 272, 277, 109 N. Y. Supp. 159. In other words, it is the duty of the court in the first place to determine whether the evidence is of the quality required in cases like the present. If it be not of that quality, there is nothing to go to the jury. The evidence in the present case was certainly not of the requisite quality.

Judgment and order reversed and a new trial granted, with costs to appellant to abide the event. All concur.