WILLIAM STILLWELL, Plaintiff, v. CAROLINE V. BATEMAN et al., Defendants.

(Supreme Court, Kings Special Term, January, 1914.)

Contracts — distinction between contract or agreement and expression of intention — oral contract of adoption — evidence.

There is a very clear distinction between a contract, or agreement, to make a devise or bequest and an expression of an intention so to do.

An oral contract alleged to have been entered into with defendants' father and mother since deceased, whereby it is claimed that they agreed with plaintiff's mother to adopt and bring him up as one of their own children and that he should share equally in their estate with their own children, cannot be established by the uncorroborated testimony of plaintiff's mother who, when he was three months old, became a domestic servant in the decedents' family and served there for over twenty years.

ACTION by plaintiff to enforce certain claims against certain property.

Ernest P. Seelman, for plaintiff.

Andrew F. Van Thun, Jr., for defendants.

MANNING, J. The plaintiff, a man about forty years old, brings this action to enforce certain claims or rights which he alleges he has in and to property formerly owned by one James Stillwell and Mary Stillwell, his wife, both of whom are dead, the former having died in 1892 and the latter in 1911.

James Stillwell and his wife were for many years residents of Gravesend Beach, Kings county, N. Y., where they conducted what was known as Stillwell's Hotel.

It appears that in the year 1873 the plaintiff's mother sought and obtained employment with the Stillwells as a domestic servant and she took with her to the Stillwells' house the plaintiff who was then about three months old.

Plaintiff's contention is that the Stillwells agreed with his mother to adopt him and bring him up as one of their own children, and that there was an agreement that he was to share equally in their estate with their own children, of whom there were three.

Plaintiff lived in the Stillwell household for about thirty-six years and his mother served there for a period of about twenty-two years. There is no doubt that the plaintiff rendered good and faithful service to the Stillwells during this long period of time, and that he may not have been fully or adequately compensated for his work; but the courts cannot be expected to put forth gratitude where it does not already exist, nor can they apportion estates among those who are not legally entitled thereto.

When James Stillwell died, in or about the month of September, 1892, he left all his property to his wife, Mary Stillwell, absolutely and forever, and Mary Stillwell subsequently died leaving the property so acquired to her two married daughters, saving only a legacy of $250 which she bequeathed to the plaintiff.

The plaintiff bases his right of action upon an alleged contract said to have been made between the two Stillwells and his mother when he was three months old. The alleged contract, as testified to by the plaintiff's mother, was entirely oral and she admits that there was no one present to corroborate the

making of the same. The case necessarily is based upon the mother's testimony. She explains how she first met the Stillwells; how she took the child to their home, and events leading up to, and the making of, the said alleged agreement, whereby, as he says, they agreed to adopt plaintiff as their own, to bring him up as their son, and to treat him the same as their own, and to leave him with their own a share in their property " share and share alike."

On the trial plaintiff called the following witnesses to corroborate his mother: Mrs. Davis, an aunt of the plaintiff; Miss Burghart, also an aunt of the plaintiff; Beale Elliott, formerly a waiter in the employ of the Stillwells; Josephine Brend, a neighbor; and one Morris Shirk, a man who furnished the Stillwells with hotel supplies. The testimony of the two aunts is not very strong or even satisfactory. It is only natural that they should support the story of the plaintiff's mother and this they endeavor to do by detailing certain statements alleged to have been made by the Stillwells at times when they visited their sister at the Stillwell homestead. The dates of the alleged conversations are somewhat doubtful and the two witnesses do not attempt to corroborate the plaintiff's mother as to the exact wording or details of the alleged agreement. The evidence of the witnesses Elliott, Brend and Shirk is equally unsatisfactory and falls far short of proving the making of the contract which the plaintiff must prove in order to succeed in an action of this kind.

The present case is analogous to a great many similar cases decided in this state, and not one of them goes to the extent of frustrating the effect of a last will and testament duly admitted to probate on evidence of this character. The well-defined doctrine and rules are clearly set forth in the following cases: *Hamlin* v,

*Stevens,* 177 N. Y. 39; *Rosseau* v. *Rouss,* 180 id. 116; *Taylor* v. *Higgs,* 202 id. 65; *Wallace* v. *Wallace,* 137 N. Y. Supp. 41; *Schaney* v. *Carr,* 178 N. Y. 484.

There may have been something said by the Stillwells, probably there was, about their *intention to leave* the plaintiff some part of their property; but there is a very clear distinction between a contract or agreement to *make a devise* or bequest and an *expression of intention so to do.* See *Wildmen* v. *Jones,* 150 App. Div. 514–516.

The alleged contract was an oral one, and not a witness was produced to corroborate plaintiff's mother in her testimony as to the making thereof; it does not measure up to the standard required by the authorities, which provide for certain elements to exist in cases of this kind: 1. Such a contract should be in writing and the writing produced, or, if ever based upon a parol agreement, the evidence should be given and corroborated in all essential particulars by disinterested witnesses. *Hamlin* v. *Stevens,* 177 N. Y. 39. 2. Such testimony must be of the clearest and most convincing character. *Rosseau* v. *Rouss,* 180 N. Y. 116–121. 3. Verbal admissions of decedent in any event and especially when uncorroborated by other facts or evidence should always be weighed with great caution and such admissions made in the course of casual conversations when testified to after a great lapse of time should be given slight probative force. *Rosseau* v. *Rouss, supra.* 4. The testimony of such a witness should be free from circumstances making it appear like an afterthought. 5. The evidence must establish the alleged contract in certain and definite terms. *Taylor* v. *Riggs,* 202 N. Y. 65, 70. 6. The admissions should be recalled and expressed in the exact language of the decedent and not according to the

witness's understanding. *Tousey* v. *Hastings,* 127 App. Div. 96, 97.

Bearing in mind the principles set forth in the foregoing cases, the plaintiff's cause of action must fall. I, therefore, decree judgment for the defendants.

Judgment for defendants.