LILLIAN B. TAYLOR et al., Respondents, *v.* JOHN B. HIGGS
et al., as Administrators of the Estate of ALMA M.
TAYLOR, Deceased, et al., Appellants.

Contract — alleged agreement by decedent, in lifetime, as to
disposition of estate by will — evidence examined and held insuf-
ficient to establish such agreement — effect of dissent on a ques-
tion of law in Appellate Division.

1. The claim of the plaintiffs is that, being dissatisfied with the
terms of the will of their father, and threatening to contest its
probate, his widow promised, in consideration of their allowing
the will to go to probate, to leave them on her decease all the
property she had received from her husband. No objections had
been filed to the probate of the will, nor does there seem any
ground on which even a plausible contest might have been made.
There is no claim that the father was in any way incompetent to
make a will, and the trial court found not only that he was of sound
and disposing mind and memory, but that the execution of the will
was not procured by reason of any undue influence. *Held,* that
although a divorce obtained by the widow from a former husband
was void this would not affect the validity of the testamentary
dispositions in her favor, and that the plaintiffs must fail in their
action to enforce the alleged contract.

2. Such contracts should be in writing, and the writing should
be produced, or, if based upon parol evidence, it should be given or
corroborated, in all substantial particulars by disinterested wit-
nesses. (*Hamlin* v. *Stevens,* 177 N. Y. 39, and *Rosseau* v. *Rouss,*
180 N. Y. 116, cited and approved.)

3. A sister of the decedent and a beneficiary under his will, while
testifying to the alleged promise of the widow, stated that she,
also, had agreed to leave to the plaintiffs all of the property
bequeathed to her by her brother. Thereafter the witness was per-
mitted to testify that she had made a will to that effect, which latter
statement was received under objection and exception. *Held,* that
it was erroneously admitted; that no declaration of the witness
that she intended to leave property to her nieces, nor any act of
hers in conformity with such declaration, would tend to prove that
the deceased had made a similar promise or agreement as to her
property.

5

4. That a member of the Appellate Division dissents on a question of law does not show that he affirms the disposition of a cause on questions of fact.

*Taylor* v. *Higgs*, 136 App. Div. 906, reversed.

(Argued March 23, 1911; decided April 25, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 7, 1909, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene M. Ashley* for appellants. The plaintiffs have failed to establish the contract alleged in the complaint by the testimony of disinterested witnesses. (*Rosseau* v. *Rouss*, 180 N. Y. 121; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Johnson* v. *N. Y. C. & H. R. R. R. Co.*, 173 N. Y. 79–83; *Mahaney* v. *Carr*, 175 N. Y. 454; *Hamlin* v. *Stevens*, 177 N. Y. 50; *Ide* v. *Browne*, 178 N. Y. 26; *Edson* v. *Parsons*, 155 N. Y. 555; *Shakespeare* v. *Markham*, 72 N. Y. 400; *Lucus* v. *Bors*, 110 App. Div. 220; *Hart* v. *Tuite*, 75 App. Div. 323.) The court erred in permitting the witness Beckham to testify that she had made her will and that she had willed the $900 received from her brother's estate to the plaintiffs in this action. (*Silverstein* v. *H. C. R. R. Co.*, 117 N. Y. 293; *Latimer* v. *Burrows*, 163 N. Y. 9.)

*William F. Canough* for respondents. Positive and direct testimony, not incredible upon its face, given by a witness who is not impeached or contradicted, is conclusive. (*Lomer* v. *Meeker*, 25 N. Y. 361; *Kavanagh* v. *Wilson*, 70 N. Y. 177 ; *Hull* v. *Littauer*, 162 N. Y. 569; *S. Nat. Bank* v. *Weston*, 172 N. Y. 250; *Strong* v. *Knights of Pythias*, 189 N. Y. 346; *Wendel* v. *Leo*, 195

N. Y. 76.) A contract to leave property by will is valid, and equity will compel a specific performance. (*Middleworth* v. *Ordway*, 191 N. Y. 404; *Bouton* v. *Welch*, 48 App. Div. 378; 170 N. Y. 554; *Healy* v. *Healy*, 55 App. Div. 315; 166 N. Y. 624; *Bush* v. *Whittaker*, 45 Misc. Rep. 74; *Parsell* v. *Stryker*, 41 N. Y. 480; *Gates* v. *Gates*, 34 App. Div. 608; *Gall* v. *Gall*, 64 Hun, 401; 138 N. Y. 675; *Godine* v. *Kidd*, 64 Hun, 585; *Phalen* v. *U. S. Trust Co.*, 186 N. Y. 182; Rood on Wills, §§ 54–57; Schouler on Wills, § 454; 2 Beach on Mod. Eq. Juris. § 602; *Johnson* v. *Hubbell*, 66 Am. Dec. 788 ; *Winnie* v. *Winnie*, 166 N. Y. 263.)

CULLEN, Ch. J.  The action was brought against the heirs at law, administrators and next of kin of Alma M. Taylor to specifically enforce a contract alleged to have been made by the deceased whereby she promised upon her death to devise and bequeath to the plaintiffs all the property that she had received under the will of her late husband, Dr. Judson J. Taylor, the father of the plaintiffs.  The Special Term decided in favor of the plaintiffs and that decision has been affirmed at the Appellate Division by a divided court.

The circumstances of the case and the relations of the parties are as follows: In June, 1895, Dr. Judson J. Taylor, the father of the plaintiffs, married the defendants' intestate, Alma M. Robinson, at the city of Syracuse, where both the parties resided, and lived with her until his death on July 23rd, 1897.  A short time prior to the marriage Alma M. Robinson obtained in the territory of Oklahoma a decree of divorce from her husband, William Robinson, on service of process by publication.  So far as appears by the record this decree was clearly void, the parties being residents of New York state, neither living in Oklahoma, and the defendant not appearing in the suit.  Dr. Taylor, however, was aware of the defect in the divorce proceedings, and so the trial court has found.

At the time of the marriage referred to, Dr. Taylor trans-
ferred and conveyed to the plaintiffs property to the
value of at least $15,000. The estate possessed by him
at his death seems to have been less than $20,000, of
which by his will he gave to his wife Alma property worth
between ten and eleven thousand dollars, about $2,500 to
each of his daughters, and some legacies or devises to
other relatives and connections.

The claim of the plaintiffs is that they being dissatis-
fied with the terms of the will and threatening to contest
its probate, the widow, Alma, promised in consideration
of their allowing the will to go to probate, to leave to
them on her decease all the property she had received
from her husband. The evidence to establish this agree-
ment is of a most unsatisfactory character. No objections
had been filed to the probate of the will, nor does there
seem any ground on which even a plausible contest might
have been made. There is no claim that Dr. Taylor was
in any way incompetent to make a will, and the trial
court has found not only that he was of sound and dis-
posing mind and memory, but that the execution of the
will was not procured by reason of any undue influence.
That the invalidity of Alma's divorce would not affect
the validity of Dr. Taylor's testamentary dispositions
seems clear. (*Gelston* v. *Shields*, 78 N. Y. 275.) It does
not appear that the plaintiffs ever consulted counsel, but
confined themselves to expressions of dissatisfaction with
the provisions of their father's will. It is probably true
that plaintiffs, as heirs at law of their deceased father,
could have objected to the probate of the will, and the
withdrawal of opposition would afford some consideration
for the support of a promise on behalf of their step-
mother, still it is evident that in this case the consideration
was of the most unsubstantial character. The testimony
to establish the agreement contended for was that of
Mrs. Beckham, a sister of Dr. Taylor, and Mrs. Treat, a
sister of the plaintiffs' mother. Mrs. Beckham was a

beneficiary under the doctor's will to the extent of some $900, and Mrs. Treat's husband was also a beneficiary, but to what amount does not appear in the evidence. It would not be practicable to quote in detail the testimony of these witnesses. Mrs. Beckham seems to have carried on most of the negotiations on behalf of the plaintiffs. She testified that she commenced the conversation with Mrs. Taylor, at which the daughters were present, by saying : "Girls, I wish to know your decision in the matter before I return home. I shall remain true to my promise that I will will you all the property left by my brother to me upon my death." Then Mrs. Taylor said : "Now girls, if you will drop this matter, give it no further thought and take no proceedings, be perfectly safe in the statement I made at the beginning, that at my death your father's property which was willed to me will be willed to you. That was a promise I made with your father," and to this the girls assented. This is the most direct testimony of an agreement between the parties. Mrs. Treat's testimony is of the same general character. Much of the testimony consists of admissions by Mrs. Taylor. Other witnesses were produced to prove various statements by Mrs. Taylor of her intention to dispose of the property to the plaintiffs, but the unreliability of such testimony is made apparent by the evidence of one witness for the plaintiffs who states that Mrs. Taylor told her that she intended to remodel the homestead and that it was to be so arranged that upon her death it should go to the plaintiff Lillian, but if Lillian died first, then it should go to herself — an agreement or plan entirely inconsistent with the alleged agreement that all the property obtained from her husband should go on her death to the two plaintiffs.

In *Hamlin* v. *Stevens* (177 N. Y. 39) Judge VANN, speaking for the court and referring to agreements of the character here sought to be enforced, said : "Contracts of the character in question have become so frequent of

recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them, and in enforcing them, when established, by specific performance. Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises. * * * Such contracts should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses." (p. 47.) In *Rosseau* v. *Rouss* (180 N. Y. 116) the same judge, again speaking for this court, said: "Thus, the evidence relied upon to establish the contract is, first, the testimony of the mother, who tried to swear $100,000 into the pocket of her own child, and, second, the testimony of witnesses who swear to the admissions of a dead man. The former is dangerous ; the latter is weak, and neither should be acted upon without great caution. We have repeatedly held that such a contract must not only be certain and definite and founded upon an adequate consideration, but also that it must be established by the clearest and most convincing evidence." (p. 120.) Tested by these rules it seems to me the plaintiffs did not establish their case.

But if I should err in this view there is one plain error in the admission of evidence for which the judgment should be reversed, as it is apparent that the evidence so admitted influenced the decision of the trial court. After Mrs. Beckham had narrated her story of the transactions and conversations between the parties the trial judge asked her, over the objection and exception of the defendants' counsel, whether she had made her will leaving to the plaintiffs the $900 which she had received from her brother's estate. She answered in the affirmative. The incompetency of this testimony is clear. The witness could not corroborate her evidence by her own acts. There are certain cases in which, when a witness has been impeached, he may be sustained by showing previous dec-

larations to the same effect as his testimony on the stand. The evidence admitted does not fall within any such rule, and the rule itself applies only to declarations made by the witness before any dispute or litigation has arisen.   It does not appear when the witness made her will and at any time she was at liberty to change it.   But chiefly, no declaration of the witness that she intended to leave property to her nieces, nor any act of hers in conformity with such declaration, would tend to prove that the deceased had made a similar promise or agreement as to her property.

The learned counsel for the respondents contends that this is a case of unanimous affirmance, and, therefore, we are precluded from examining the evidence.   This view is erroneous.   The order recites that two of the justices dissented upon the authority of *Hamlin* v. *Stevens* (*supra*). It is urged that this dissent was on a question of law. Assuming that the dissent was on a question of law, that would not at all aid the plaintiffs in their contention.   That a judge dissents on a question of law does not show that he affirms the disposition on the questions of fact.   But beyond this, the reference of the dissenting justices to *Hamlin* v. *Stevens* clearly shows that their dissent was upon questions of fact.

The judgment should be reversed and a new trial granted, with costs to abide the event.

GRAY, HAIGHT, VANN, WERNER and COLLIN, JJ., concur; HISCOCK, J., not voting.

Judgment reversed, etc.