HENRIETTA SIMON, Respondent, *v.* JULIUS ETGEN et al., as Executors of WILLIAM H. BURGESS, Deceased, Appellants.

Appeal — unanimous affirmance by Appellate Division — when dissent by one of the justices as to item of interest, only, does not prevent decision from being unanimous — contracts — general release of debtor upon agreement to sell certain real estate and pay proceeds thereof on indebtedness — construction of such agreement — unreasonable delay in selling property in question — interest from date of breach of contract.

1. Where the order of the Appellate Division attested the concurrence of all the justices, except one, who dissented "only as to the allowance of interest," and otherwise concurred, the dissent of the justice on that single question, coupled with the statement that he concurred with his associates on all others, leaves no room for doubt that there was an unanimous affirmance on every question of fact in the case. (*Taylor* v. *Higgs,* 202 N. Y. 65, distinguished.)

2. The courts avoid, if possible, any construction of a contract that is unreasonable or inequitable, and especially one that will place one of the parties at the mercy of the other. Equity looks through the form to the substance and purpose of the agreement, and moulds its decree in accordance with what the parties may fairly be presumed to have intended.

3. In consideration of a general release defendants' testator agreed to pay plaintiff's assignor whatever sum such decedent might realize on the sale of certain real estate over and above a sum therein named, the sum so to be paid in no event to exceed a certain amount. The property remained unsold for a period of some eight years, and in this action unreasonable delay in selling the property is alleged as a breach of the contract. *Held,* that there was under the contract an implied duty to sell within a reasonable time if there were opportunity. The failure to sell within a reasonable time after favorable opportunities had arisen, coupled with a transfer by defendants' testator to his wife which disabled him from performance on his part, justified the court in submitting to the jury the question whether there had been a breach of the contract. (*Lorillard* v. *Silver,* 36 N. Y. 578; 3 Trans. App. 143, examined and criticised.)

4. Where the executor made an affidavit of the value of the property in a transfer tax proceeding, he was acting within the

scope of his duties as executor, and his admissions in that capacity were competent evidence against the estate, and the evidence was not less competent because he based his admission upon the statements of an expert whom he had employed.

5. The trial court charged: "If you find a breach occurred as of a certain date * * * then you must give interest from the date of the breach that you find." The jury found that a breach occurred on a certain date and awarded interest therefrom. *Held,* that there is evidence in the record which justifies the jury's finding.

*Simon* v. *Etgen*, 156 App. Div. 920, affirmed.

(Argued November 18, 1914; decided January 19, 1915.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 17, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Albert Stickney* for appellants. The affirmance by the Appellate Division was not unanimous and this court has power to review the question whether the verdict is supported by the evidence. (*Taylor* v. *Higgs,* 202 N. Y. 65; *Clark* v. *Brooklyn Heights R. R. Co.,* 174 N. Y. 523.) The construction of the contract by the trial court was erroneous, and defendants' motions to dismiss should have been granted. (*Lorillard* v. *Silver,* 36 N. Y. 578; *Tooker* v. *Arnoux,* 76 N. Y. 397; *Moffat* v. *Laurie,* 15 C. B. 583; *Wemple* v. *Stewart,* 22 Barb. 154; *Cartledge* v. *West,* 2 Den. 377; *Janpol* v. *Gold,* 122 App. Div. 401; *Franklin* v. *Robinson,* 1 Johns. Ch. 157; *Lighton* v. *City of Syracuse,* 188 N. Y. 499; *Dady* v. *O'Rourke,* 172 N. Y. 447; *Lossing* v. *Cushman,* 195 N. Y. 386.) There was no evidence from which the jury could find a breach of the contract. Not only was there was no evidence that Burgess could have sold the property in July, 1906; the proof, on the contrary, is all to the effect that he was then trying to sell and could not. (*Dean* v. *T., etc., R. R.*

Co., 113 App. Div. 437; *Booth* v. *R. R. Co.*, 67 N. Y. 593; *Burdick* v. *Freeman*, 120 N. Y. 420; *Jones* v. *K. & R. Co.*, 95 App. Div. 140; *Tousey* v. *Hastings*, 194 N. Y. 79; *Wallace* v. *Wallace*, 158 App. Div. 273; *Tompkins* v. *Leary*, 134 App. Div. 114; *Roberge* v. *Bonner*, 94 App. Div. 342; 185 N. Y. 265.) It was error to charge that the jury must give interest from the date of the breach that they found. (*Sloan* v. *Baird*, 162 N. Y. 327; *McMaster* v. *State*, 108 N. Y. 542; *Shafer Co.* v. *Upton Co.*, 133 App. Div. 796.)

*Henry L. Scheuerman, Herbert R. Limburg* and *Harry F. Mela* for respondent. The Appellate Division has unanimously decided that there is evidence sustaining the verdict. (Const. of N. Y. art. 6, § 9; Code Civ. Pro. § 191, subd. 4.) The contract impliedly obligated defendants' testator to make reasonable efforts to . sell the premises within a reasonable time and at a reasonable price, and his failure to do so constituted a breach of the contract. (*Russell* v. *Allerton*, 108 N. Y. 288; *Industrial Trust* v. *Tod*, 180 N. Y. 215; *King* v. *H. R. Realty Co.*, 210 N. Y. 467; *Booth* v. *Cleveland Rolling Mill Co.*, 74 N. Y. 15; *Genet* v. *D. & H. Canal Co.*, 136 N. Y. 593; *Jones* v. *Kent*, 80 N. Y. 585; *McGuire* v. *Richards*, 70 Hun, 67; *Taylor* v. *Enoch Morgan's Sons Co.*, 124 N. Y. 184; *Mogulewsky* v. *Rohrig*, 104 App. Div. 147; *Hix* v. *Edison E. L. Co.*, 10 App. Div. 75; *Jacquin* v. *Boutard*, 89 Hun, 437; 157 N. Y. 686; *Horton* v. *Hall & C. Mfg. Co.* 94 App. Div. 404.) The court correctly charged the jury. (*Rexter* v. *Starin*, 73 N. Y. 601.) The trial court ruled properly upon the questions of evidence. (*Matter of City of New York*, 118 App. Div. 272; *Gallagher* v. *Kingston Water Co.*, 25 App. Div. 82; 164 N. Y. 602; *People ex rel. Powers* v. *Kalbfleisch*, 25 App. Div. 432; *Cook* v. *Railroad Co.*, 144 N. Y. 115; *Breese* v. *Graves*, 67 App. Div. 322; *Chicago & N. W. Ry. Co.* v. *Ohle*, 117 U. S. 123; *Pope* v. *Allis*, 115 U. S. 363; *Reed*

*v. McCord*, 160 N. Y. 330; *Shaddock* v. *Town of Clifton*, 22 Wis. 114.) The award of interest on the sum of $25,000 from the date of breach was proper. (*Lush* v. *Druse*, 4 Wend. 313; *Van Rensselaer* v. *Jewett*, 2 N. Y. 135; *Dana* v. *Fielder*, 12 N. Y. 40; *McMahon* v. *R. Co.*, 20 N. Y. 463; *Adams* v. *Fort Plain Bank*, 36 N. Y. 255; *Wilson* v. *City of Troy*, 135 N. Y. 96; *Einstein* v. *Dunn*, 61 App. Div. 195; 171 N. Y. 648; *Sweeney* v. *City of New York*, 173 N. Y. 414; *Schmitt Bros.* v. *Ins. Co.*, 82 App. Div. 234; *Degnon-McLean Co.* v. *City Trust Co.*, 99 App. Div. 195; 184 N. Y. 544; *Reynolds* v. *Burr*, 104 App. Div. 31.)

WERNER, J. This is an action to recover damages for the breach of a contract evidenced in part by the following letter:

"NEW YORK, *July* 15, 1903.

"Messrs. ROSE & PUTZEL:

"GENTLEMEN.— If you will procure a general release executed to me by Ferdinand H. Mela of any and every claim that he may allege that he has against me, I will agree to pay you for his account whatever sum I may realize on the sale of the Coronet, 58th Street and Sixth Avenue, over and above six hundred and ninety thousand dollars, but only to the extent, however, of twenty-five thousand dollars, so that in no event shall he receive from me more than twenty-five thousand dollars. In speaking of six hundred and ninety thousand dollars, I include the present mortgages of all kinds affecting the property. This is intended to bind me and my executors.

"Very truly yours,

"W. H. BURGESS."

The Messrs. Rose & Putzel to whom the foregoing letter was sent, were well-known lawyers in the city of New York, who then represented Burgess and Mela in some legal affairs. Mela promptly executed and delivered the release mentioned in the letter. That was in July, 1903.

This action was not commenced until August, 1911, and at that time the apartment house known as the "Coronet" still remained unsold. The plaintiff is the assignee of Mela, and the defendants are the executors of Burgess, who died July 11th, 1909. The alleged unreasonable delay on the part of Burgess in selling the property is the breach of the contract assigned in the complaint.

At the threshold of the discussion it is necessary to determine whether the judgment of the trial court was unanimously affirmed by the Appellate Division, for if the affirmance was unanimous, we must assume that there was ample evidence to support the judgment. The original order of the Appellate Division attested the concurrence of all the justices, except Justice CARR, who dissented "only as to the allowance of interest." On motion the order was subsequently modified by adding at the end of the above-quoted sentence the words, "and otherwise concurs." The record discloses, therefore, that all the justices at the Appellate Division concurred in everything, except that Mr. Justice CARR dissented as to the allowance of interest to the plaintiff. Upon this record there can be no doubt, we think, that the respondent is entitled to invoke the unanimous affirmance rule. The amended order in the case at bar explicitly recites one thing that was lacking in the order in *Taylor* v. *Higgs* (202 N. Y. 65, 71), which contained the simple recitation that two of the justices dissented upon the authority of a specified decision of this court. As to the order in the case of *Taylor* former Chief Judge CULLEN observed: "It is urged that this dissent was on a question of law. Assuming that the dissent was on a question of law, that would not at all aid the plaintiffs in their contention. That a judge dissents on a question of law does not show that he affirms the disposition on the questions of fact." The order in the case at bar is not open to the same criticism, for it states expressly that Mr. Justice CARR concurred with his associates on all questions of fact. The

38

question whether interest should be allowed was one of
law. The dissent of Mr. Justice CARR on that single
question, coupled with the statement that he concurred
with his associates on all others, leaves no room for doubt
that there was an unanimous affirmance on every ques-
tion of fact in the case, and this is the assumption upon
which we shall pursue our further discussion. ,

While the contract, which is partially set forth in the
letter written by Burgess, did not in terms impose upon
him an absolute duty to sell at any particular time, there
can be no doubt that Burgess intended thereby to lead
Mela to believe that an honest effort would be made to
procure a sale within a reasonable time. The trial court
and the Appellate Division have, therefore, properly
imported into the contract an implied duty on the part of
Burgess to sell within a reasonable time if there was
opportunity. Counsel for the defendants contends that
the language of the agreement warranted no such impli-
cation. In this, we think, he is in error. Implied obli-
gations should, of course, not be lightly imposed by
virtue of written agreements which contain no lan-
guage covering the particular contingency in contro-
versy. Our courts have always been cautious in imput-
ing such obligations, but it is none the less true, as
stated by Judge COLLIN in a recent case, that " The doc-
trine of implied contract is firmly placed in our system of
jurisprudence." In *Genet* v. *D. & H. C. Co.* (136 N. Y.
593, 609) Judge FINCH states the rules governing this
class of obligations with his characteristic felicity of
expression, as follows: " They always exist where equity
and justice require the party to do or to refrain from
doing the thing in question; where the covenant on
one side involves some corresponding obligation on the
other; where by the relations of the parties and the
subject-matter of the contract a duty is owing by one not
expressly bound by the contract to the other party in
reference to the subject of it. In this court we have

thrown some safeguards about the doctrine to secure its prudent application, and have said that a promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it (*Dermott* v. *State*, 99 N. Y. 101), and that it is to be raised only to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate that they intended to effect. (*King* v. *Leighton*, 100 N. Y. 386.) "

The construction which counsel for the appellants asks us to place upon this agreement is that it obligated neither Burgess nor his executors to sell until they felt disposed to do so. We may admit that this would be the extent of the obligation imposed by the naked letter of the contract, but equity looks through the form to the substance and purpose of the agreement, and moulds its decree in accordance with what the parties may fairly be presumed to have intended. Every contract implies good faith and fair dealing between the parties to it. (*Industrial & Genl. Trust, Limited* v. *Tod*, 180 N. Y. 215; *Brassil* v. *Maryland Casualty Co.*, 210 id. 235.) When the contract between these parties is read in the light of this implication, it is obvious that the defendants assumed the obligation to sell within such reasonable time as the circumstances would permit. Any other construction of the contract would permit Burgess and his successors in interest to enjoy the fruits of Mela's release without making any effort to sell the property, and thus Mela would be left to live, perhaps to a ripe old age, without reaping the slighest advantage from his own prompt performance of the contract. The courts always avoid, if possible, any construction of a contract that is unreasonable or inequitable, and especially one that will place one of the parties at the mercy of the other. (*Schoellkopf* v. *Coatsworth*, 166 N. Y. 77, 84; *Gillet* v. *Bank of America*, 160 id. 549, 557; *Russell* v. *Allerton*, 108 id. 288; *Jugla* v. *Trouttet*, 120 id. 21, 28.) It is to be

observed, moreover, that the language of this written instrument was chosen by Burgess, and if it is to be regarded as ambiguous, or as failing to adequately express the agreement that was in the minds of the parties, Mela and his assignee are entitled to the most favorable construction thereof. (*Industrial & General Trust, Ltd.,* v. *Tod,* 180 N. Y. 215, 225.)

The appellants rely upon the case of *Lorillard* v. *Silver* (36 N. Y. 578; more fully reported, 3 Trans. App. 143). There the plaintiff agreed to transfer to the defendant a parcel of land. The defendant agreed to pay plaintiff the sum of $500 '' in case I realize thirty-five hundred dollars for said land, or any other sum between three thousand and thirty-five hundred that I may sell the land for.'' In the action to enforce the agreement, which was made in March, 1856, it appeared that the defendant had an offer to purchase during the summer of the same year for $4,500, which he refused, and later the property declined in value. The plaintiff was defeated. The reasons were given in two opinions of this court; one of which was written by Judge HUNT and the other by Judge GROVER, and two judges dissented. The material provisions of the contract in that case were very similar to those we are considering in the case at bar, but in the *Lorrilard* case it appeared that shortly after the making of the contract the defendant received a single offer for the property. That was all of the plaintiff's proof on that subject. Judge HUNT, in his opinion, took the position that the defendant could regard his own interests exclusively and sell when he chose; and Judge GROVER held that the contract contained an implied promise on the part of the defendant to sell, but that he had the right to make reasonable efforts to obtain the highest price. The report of that case does not disclose which of the two opinions, if either, received the approval of a majority of the court. The grounds upon which they proceeded are radically different, and it is impossible

to extract from the decision any definite principle that can be regarded as a controlling rule in actions upon implied promises. For aught we know of that case it may be that, upon its peculiar facts, it was correctly decided. Authorities and precedents are useful and binding only in so far as they establish principles which the courts can follow in deciding pending cases. (*Matter of Hallett's Estate*, L. R. [13 Ch. Div.] 696, 712.)

In the case at bar it appears that the writing was signed July 15th, 1903. When Burgess died six years later, in July, 1909, he was still the owner of the "Coronet" property, and it passed to his trustees under his will, who now have title. Before that, however, and a few months after the date of the writing, Burgess conveyed the property to his wife, who held it for eighteen months. It does not appear just what the purpose of this transfer may have been, but this unexplained transaction warranted the inference that Burgess had voluntarily disabled himself from performance on his part, and had thus committed a breach of the contract. (*Patterson* v. *Meyerhofer*, 204 N. Y. 96, 101; *Wilson* v. *Mechanical Orguinette Co.*, 170 id. 542.)

The property in question was a large apartment house, 10½ stories in height, with a net rental per year, which Burgess was receiving, ranging from $26,000 to $31,000. Both parties concede that the market for such properties was narrow, and was restricted to investment buyers. The New York Athletic Club, which owned an adjoining parcel, was desirous of purchasing the "Coronet," but Burgess refused to sell for less than $875,000, which was so far above the market price as to be prohibitive. Beyond this the plaintiff produced evidence tending to show that during the period in which Burgess held title to the property he had many offers to sell at prices above the market value, and that, although none of these offers fell below $715,000, Burgess persisted in declining to sell. Under the unanimous affirmance by the Appellate Divi-

sion of the judgment entered at Trial Term upon the verdict we must assume that these facts are conclusively established.

The case at bar is clearly differentiated from the *Lorillard Case* (*supra*), for here the jury were warranted in finding that Burgess had not in good faith attempted to sell the property, but had contrived to prevent a sale, and thus to retain the property for his own enrichment. In the circumstances we think the failure to sell within a reasonable time after favorable opportunities had arisen, coupled with the suspicious transfer by Burgess to his wife, justified the court in submitting to the jury the question whether there had been a breach of the contract. (*Nunez* v. *Dautel*, 19 Wall. 560; *Noyes* v. *Barnard*, 63 Fed. Rep. 782; *Edmunds* v. *Wilkinson*, 7 Carr. & P. 387; *M'Intyre* v. *Belcher*, 14 C. B. [N. S.] 654.)

In connection with the main question above discussed counsel for the appellants contends that the trial justice erred in his charge and in declining certain requests made on behalf of the defendants bearing upon the proper construction of the contract. We do not deem it necessary to consider at length the exceptions in this behalf. A careful reading of the main charge and of the requests granted and refused has convinced us that the case was fairly submitted to the jury.

It is urged by the appellants that the trial court committed error in receiving in evidence, as bearing upon the question of the value of the " Coronet " property, an affidavit made by the defendant Taft, as executor of Burgess, in the transfer tax proceeding relating to the Burgess estate. In this affidavit it appears that Taft fixed the value of the property at $700,000, and that this valuation was to some extent based upon the estimate of a real estate expert which Taft had adopted as his own. There can be no doubt that in making this affidavit Taft was acting within the scope of his duties as executor, and his admissions in that capacity were competent evidence

against the estate.   The evidence was not less competent because he based his admissions upon the statements of an expert whom he had employed.

And finally it is urged that it was error to permit the jury to award interest.   The learned trial court charged: " If you find a breach occurred as of a certain date, that is, if Mr. Burgess and his successors in interest should have sold this property when it was salable at a specific time, at a price above $690,000, which would have satisfied the terms of this contract as I have described them to you, then you must give interest to the date of the breach that you find."   To this the defendants took an exception.   The jury found that a breach occurred on July 1st, 1906, and awarded interest from that date. There is evidence in the record which justifies the jury's finding.   The claim of the appellants made in this behalf is that the damages were unliquidated and dependent upon the market value of the property and, therefore, no interest could be awarded.   The contract provided, in substance, that if the property should be sold at a price above $690,000, Mela would be entitled to receive any sum in excess of that amount, but not to exceed $25,000.   While the sum Mela was to receive was thus uncertain, it was nevertheless capable of ascertainment.   The evidence as to market value was of importance only as it bore upon the question whether a sale could have been made at a sum sufficient to entitle Mela to share therein.   The amount of the recovery was in a sense dependent upon market value, but that fact did not preclude the allowance of interest. (*Sweeny* v. *City of N. Y.*, 173 N. Y. 414; *Gray* v. *Central R. R. Co. of N. J.*, 157 id. 483.)   We think, moreover, that the appellants are hardly in a position to urge that the amount due Mela was incapable of ascertainment.   If a sale was prevented by Burgess' wrongful conduct, as we are bound to assume it was, he could not set up his own wrong in order to defeat Mela's right to the sum due him, or to the interest which would have been his had Burgess

acted in good faith. The executors must abide by the case made for them by their testator. It is a familiar maxim of the law that no one shall be allowed to profit by his own wrong. We can think of no reason why the ruling in this regard should be disturbed.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDE-BACK and HOGAN, JJ., concur; CARDOZO, J., not voting.

Judgment affirmed.