[No. 22000. Department One. December 16, 1929.]

WASHINGTON NATIONAL INVESTMENT COMPANY, *Appellant,* v. E. C. LLOYD *et al., Respondents.*[1]

*Joseph C. Cheney, Elwood Hutcheson,* and *Leslie H. Dills,* for appellant.

TOLMAN, J.—This is an action to recover a commission on the exchange of real estate, tried to the court

[1]Reported in 282 Pac. 926.

sitting without a jury, resulting in findings of fact and conclusions of law adverse to the plaintiff and a judgment dismissing its action, from which judgment the plaintiff has appealed. Respondents have not appeared in this court, and we are without the assistance of any brief or argument in support of the trial court's rulings.

One of the principal questions involved is a question purely of fact, which will require a brief statement of the facts shown by the record.

Appellant is engaged in the general finance and real estate broker's business in the city of Yakima, being duly licensed as a real estate broker. In January, 1927, respondent Lloyd sought appellant's services in an attempt to dispose of a large ranch situated in Columbia county, Washington, upon which it was represented that respondents held an option, though the particular nature of this option is nowhere disclosed. The case seems to have been tried below upon the theory that respondents, while perhaps not licensed brokers, were for that reason acting under the option, and that, in effect, the purpose of the action was to collect appellant's share of a commission jointly earned.

Appellant entered into the transaction and was instrumental in finding a man who owned ranch property in Yakima county, with whom a trade was consummated, by which the Yakima man took over the Columbia county property at a valuation of $220,000; turned in his Yakima county ranch at a valuation of $60,000; assumed a mortgage on the Columbia county land for a considerable amount and paid the difference, apparently, in cash. Appellant, who had produced the purchaser of the Columbia county land, received from him a commission, apparently, in the amount of $1,500. Negotiations were had from time to time before the exchange of properties was finally consummated, and

an agreement was arrived at between the parties as to appellant's compensation. The question of fact here is as to just what were the terms of that agreement.

It seems to be admitted that, when the exchange was consummated, the seller of the Columbia county land gave to respondents an option to purchase the Yakima county land which it had taken as part payment, for the sum of $21,000 plus interest from March 1, 1927, and plus operating expenses of the ranch from March 1 to the time of the exercise of the option, and that respondents could only receive compensation for their services in effecting the sale of the Columbia county land through the exercise of this option or through the sale of the Yakima county ranch at a profit under the option. It is appellant's contention, and its evidence tended to prove, that the agreement with the respondents upon the matter of commission was based upon the valuation of both properties involved in the trade, and that, under the usual terms, the brokerage would be $7,000, of which it would be entitled to one-half, or $3,500, and, of course, the $1,500 which it had received from its client would be a credit thereon.

Several witnesses for appellant testified to a direct agreement with the respondents to the effect that respondents would pay appellant an additional $1,500, making its commission $3,000 in all, but that the time of payment would have to be delayed until they could sell the Yakima county ranch at a profit under their option. Upon the contrary, the respondents offered testimony to show that they so far disclosed the situation to the appellant as to advise it that they could get no compensation out of the transaction whatever, save only as they made a profit under and by virtue of the option upon the Yakima county ranch, and that they offered to pay to appellant $1,500 as its commis-

sion only in the event that they sold the Yakima county ranch and realized a profit.

The trial court, after seeing the witnesses in person and hearing them testify, found with the respondents that the promise made by them to the appellant was a conditional one to be by them performed only in the event that the Yakima county ranch should be sold by the respondents at a profit.

In the light of our well-settled rule, and in view of the advantage which the trial court possessed over us in the determination of the facts, we feel bound by the trial court's findings as to the promise being a conditional one only.

It then becomes necessary to determine whether the Yakima county ranch has been sold at a profit.

It appears without much contradiction that respondents used reasonable diligence in an effort to find a purchaser for the Yakima county ranch but failed entirely to find anyone who would purchase at a profit to them; that, after some delay and some extension of time, the owner of the Yakima county ranch sought to terminate the option, resulting in an action by the respondents for specific performance, which action was settled very shortly after it was instituted by the payment to the owner by a Mr. Toner of the sum of $26,-000, which was shown to be the sum then due the owner under the terms of the option. Upon this payment being made, the owner conveyed the land to Mr. Toner.

In the meantime, respondents or one of them had made application to the Federal Land Bank of Spokane for a loan of $24,000, and at the time of the trial below, it was shown that this loan had been approved, but the money had not yet been advanced; that Mr. Toner had executed a deed, in which respondent E. S. Fitch was named as grantee, covering the Yakima county ranch, which he had placed in escrow with the

Federal Land Bank to be delivered and recorded only when the proceeds of the $24,000 loan were paid to him.

At the same time, Mr. Toner took back a warranty deed from Fitch and wife, subject, we assume, to the Federal Land Bank mortgage, reconveying to him the property, to be held by him until he was made whole for the rest of his advances, there being other moneys expended by him in addition to the amount which he paid when he received the deed. It was shown at the time of the trial, without contradiction, that there was due Toner $31,000 and interest. At the time that Mr. Toner entered the picture and advanced his money and received his deed, respondent Fitch went upon the land and began to operate it, and there is testimony to the effect that he had expended upwards of $21,000 and incurred some obligations in addition thereto, in stocking the land and putting it into shape to be operated as a going concern, and he has since continued to operate it, but that he has as yet realized nothing in the way of profits.

It seemed to be the position of the respondents below that the situation is now exactly the same, so far as the realizing of a profit is concerned or the exercising of the option is concerned, as it was when the option was taken. Respondents could not sell at a profit and did not have the money to exercise the option. Mr. Toner stepped in, advanced the necessary money to obtain the title, and, in effect, became the optioner and extended the life of the option. It seems to us that this fairly summarizes the situation shown by the record. Mr. Toner holds the title and the respondents, or by agreement between them, the respondent Fitch, may still obtain title to the land by carrying out his agreement with Mr. Toner, but he has

not yet done so and may never do so. Such being the facts, is the appellant entitled to recover?

Appellant cites and relies upon *Alvord v. Cook*, 174 Mass. 120, 54 N. E. 499, which involves a commission to be paid when the contract to exchange should be carried into effect. The court there held that the agreement did not contemplate a failure to enforce the original contract, and that the party to be charged could not escape liability by his failure to compel performance under the contract for exchange. Of like effect is also *Noland v. Bull*, 24 Ore. 479, 33 Pac. 983.

Other cases cited hold, in effect, that, when the debt is absolute and the promise to pay is based upon a future contingency, the promisor cannot avoid liability by neglect or refusal to bring about the contingency or by putting it out of his power so to do. *Busby v. Century Gold Mining Co.*, 27 Utah 231, 75 Pac. 725; *Crooker v. Holmes*, 65 Me. 195; *Currency Mining Co. v. Bentley*, 10 Colo. Unrep. 271, 50 Pac. 920; *Simon v. Etgen*, 213 N. Y. 589, 107 N. E. 1066; *Taylor v. Simi Construction Co.*, 23 Cal. App. 308, 137 Pac. 1095; *Linn v. Butler*, 8 Colo. 355, 8 Pac. 588.

Also when the debt is absolute and the condition becomes impossible of performance. *Randall v. Johnson*, 59 Miss. 317; 42 Am. Rep. 365.

These are familiar rules, but they cannot be applied to the facts in this case. Respondents have not, by their own neglect or refusal to act, caused a failure to realize a profit out of the option on the Yakima land. The trial court clearly found that the debt was not absolute, but on the contrary, as appears reasonable under the conditions shown, appellant having realized $1,500 for its services and respondents having realized nothing for their services, save an uncertainty, appellant might well await the sale of the Yakima land in the mere hope of further reward and with the cer-

tainty that if no profit was thus obtained it would still be somewhat compensated by what it had already received while respondents would be wholly uncompensated.

As to the third proposition of law, this case meets neither condition. The debt, as we have seen, was not absolute, and the condition has not become impossible of performance.

We conclude that the judgment appealed from is right, and it is therefore affirmed.

MITCHELL, C. J., PARKER, BEALS, and MILLARD, JJ., concur.