In the Matter of the Judicial Settlement of the Intermediate Account of Proceedings of IRVING TRUST COMPANY and ADELAIDE ROBERTS, as Executors, etc., of BENJAMIN L. M. BATES, Deceased.*

IRVING TRUST COMPANY and ADELAIDE ROBERTS, as Executors, etc., Appellants; HELEN M. BATES and MARY HAAC ALEXANDER, Respondents.

MARY HAAC ALEXANDER, Appellant; IRVING TRUST COMPANY and ADELAIDE ROBERTS, as Executors, etc., and HELEN M. BATES, Respondents.

HELEN M. BATES, Appellant; MARY HAAC ALEXANDER, and IRVING TRUST COMPANY and ADELAIDE ROBERTS, as Executors, etc., Respondents.

First Department, December 23, 1938.

* Revg. in part 167 Misc. 641.

*Bertram L. Kraus* of counsel [*M. Claiborne Mebel* with him on the brief], for Irving Trust Company and Adelaide Roberts, as executors, appellants.

*Jerome A. Strauss* of counsel [*Jacob Newman* with him on the brief; *Foster & Newman*, attorneys], for the appellant Mary Haac Alexander.

*Frederick N. Van Zandt* of counsel [*James H. Marsh* with him on the brief], for the appellant-respondent Helen M. Bates.

UNTERMYER, J. Helen M. Bates was adjudicated to be a creditor of the estate for $75,000, to be paid, however, only "when and as funds are available for that purpose." We think no funds are available for the purpose until the amount due for Federal estate taxes and New York State taxes shall at least have been determined.

Helen Bates contends that the personalty in the hands of the executors, including taxes on certain real property alleged to have been improperly paid by them, amounts to $811,688.67, against which there is due at least $378,590.34 for Federal estate taxes and $243,962.19 for New York State estate taxes, or a total of $622,552.53. Accordingly, if all the payments claimed by her to have been improperly made by the executors are added to the personal property now in their hands and the amount of estate taxes which are conceded to be due are deducted, there would remain in the hands of the executors the sum of $189,136.14 of personalty out of which she would be entitled to be paid.

The amount of estate taxes that will be imposed, however, has not yet been determined. After the filing of the Federal tax return by the executors an audit was made by the Collector of Internal Revenue, in consequence of which the executors have been served with a proposed determination of a deficiency in Federal estate taxes alone of approximately $520,000. This deficiency results from an increase in the valuation of real property owned by the deceased at the time of his death from $3,000,000, as appraised by the executors, to $4,000,000, as claimed by the Collector of Internal Revenue. Although negotiations are pending for the

adjustment of this deficiency, it is not possible to know the amount of additional tax, if any, that will eventually be imposed. If the executors in the meantime shall pay any debt due by the decedent or his estate, each " shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid." (U. S. Code, tit. 31, § 192.) We think the executors should not, by judicial decree, be placed under the necessity of making a payment which under any possible circumstances might impose a personal liability on them. If the payment of $75,000 is required to be made at this time and the proposed deficiency in Federal estate taxes of $520,000 is eventually sustained, it would not only consume the $189,136.14 of personalty but would leave a charge against the real estate of $405,563.86. To this should be added the taxes and water charges amounting to $226,694.90 paid by the executors, which, if credited to the estate, must be charged against the real estate, together with such additional real estate taxes as may still accrue before the property can be sold. Moreover, if the increase in the valuation of the real estate be sustained there may result an increase in the New York State estate tax, the amount of which is not disclosed. Should some unforeseen and unforseeable condition occur seriously affecting the value of the real property a situation might conceivably arise where the estate might be insufficient to satisfy all these claims and the executors be personally liable for some part of the estate taxes. Such a situation, it is true, seems at this time remote and problematical, but it must be remembered that the question here is not whether it is probable that the executors may be subjected to liability but whether under any circumstances it is possible that such a liability would exist. Therefore, until the amount of inheritance taxes has at least been determined, it cannot be said that there are funds " available " for the payment of the claim of Helen Bates even if all her other contentions were sustained.

It is true that the executors have paid $976,895.38 in other claims, but of this sum $973,906.05 was in payment of balances due on brokerage accounts of the deceased secured by collateral. To procure the release of the collateral it was necessary that it be liquidated and the debit balance paid. Most of the other payments, all for small amounts, were for medical services rendered to the deceased. Nor can it be said that the delay in the final adjustment of the Federal estate tax has been occasioned by extensions obtained by the executors. Although it is true that the executors secured extensions for the payment of the tax which have not been in the least injurious to Mrs. Bates, it does not appear that the adjustment of the tax was delayed thereby.

It should also be observed in this connection that the contention is not made that the decedent's real property should have been sold by the executors. No such claim is suggested in the objections filed by Mrs. Bates and the surrogate has held that the executors were justified, under all the conditions, in postponing a sale of the real estate. Indeed, the avowed purpose of the executors to sell the real estate is criticized by Mrs. Bates in her objections on the ground that such a sale would result in increased commissions to them.

The surrogate has also held that the executors are not entitled to a management fee of five per cent on the rents collected under a lease of the real estate. After careful consideration of the comprehensive opinion of the surrogate, we are nevertheless of the opinion that the rule stated by the Court of Appeals in *Matter of Schinasi* (277 N. Y. 252) is applicable and that the management fee of five per cent should be allowed.

The decree should be reversed to the extent above indicated and payment of the claim of Helen M. Bates should be refused, without prejudice to a subsequent application for payment of the claim when funds are available for that purpose.

TOWNLEY and GLENNON, JJ., concur; MARTIN, P. J., and O'MALLEY, J., dissent in part.

O'MALLEY, J. (dissenting in part). The provision that the claim of Helen M. Bates was to be paid " when and as funds are available for that purpose " may not be so construed that she will be placed at the mercy of the executors or subject to their arbitrary decision. (*Simon* v. *Etgen*, 213 N. Y. 589; *McAvoy* v. *Schramme*, 238 App. Div. 225, 229; affd., 263 N. Y. 548.)

The executors, after having paid $976,895.38 in other claims, assert danger of personal liability to the Federal government in discharging the Bates claim in the amount only of $75,000. This claimant properly contended before the surrogate that the executors were not justified, as against creditors, in paying out of personalty the real estate taxes assessed and other carrying charges of the real property incurred, after the death of the deceased. If the executors, in the discretion granted them under the will, desire, with the consent of the ultimate beneficiaries, to carry the realty with the hope of more advantageous conditions for sale in the future, they may not, as against creditors, deplete the personalty to effect such purpose. Under present conditions in this estate, the claimant Bates will be compelled to await payment until disposition of the realty in the uncertain future. Surely, the provision above quoted should not, under the authorities cited, be so construed.

Nor is the position taken by the executors justified by their claim that a surplus of personalty of about $180,000 is unavailable because of a " proposed determination of deficiency " of Federal estate taxes in the sum of approximately $520,000. This results from an increased appraisal of the realty from $3,000,000 to $4,000,000. The delay in final adjustment and payment has been occasioned by extensions obtained by the executors and their disinclination to compel the realty to bear its own burdens. Letters testamentary were issued December 21, 1935, and the accounting decree made June 22, 1938.

The claimant Bates should not be compelled further to await payment. It is difficult to see why her claim cannot immediately be satisfied out of an estate of this size, or how jeopardy may be pleaded because of an extra $520,000 Federal estate tax, when the realty is worth at least $3,000,000 and (being unincumbered) may be easily financed. It would seem that it is time, so far as creditors are concerned, that the realty be made to share in the burdens of this estate.

We, therefore, dissent from so much of the determination of this court herein as provides that payment of the claim of Helen M. Bates be refused at this time without prejudice, and otherwise concur.

MARTIN, P. J., concurs.

Decree reversed to the extent indicated in opinion and payment of the claim of Helen M. Bates refused, without prejudice to a subsequent application for payment of the claim when funds are available for that purpose. Settle order on notice.