Meier Steihbriek,
Spec. Ref. This is an action for specific performance of a written agreement dated March 17,1953, made by Isaac Levingson with, his four children and his wife, the mother of the children. It is claimed that the provisions of three codicils dated, respectively, September 12, 1957, February 2, 1960 and April 4,1960 are in violation of the March agreement. Significantly it is not sought to attack provisions of decedent’s will dated December 10,1957, as distinguished from the codicils.
The plaintiffs are two of the children; the individual defendants are the executors of the decedent’s estate, and the defendant Katz — a daughter — is, also, beneficiary of a bequest under the codicil of February 2,1960. The defendant Yeshiva University is the beneficiary of the bequests of securities valued at almost $200,000 provided for by the first and third codicils. Its answer denies the allegations of the complaint and sets up various affirmative defenses. Defendant executors admit the allegations of the complaint and cross-claim for the same relief demanded by plaintiffs. Thus all of the children of decedent are, in effect, seeking the same relief, namely, a determination that the provisions of the codicils, so far as they make the bequests to *147 defendants Yeshiva University and Katz, are in violation of the agreement of March 17, 1953. The Attorney-General was made a party pursuant to subdivision 3 of section 12 of the Personal Property Law, and has appeared and joined in the answer of Yeshiva University to the complaint and cross complaint.
The agreement sought to be enforced is dated March 17,1953 ; it is between the four children as parties of the first part, the father, Isaac (decedent), as party of the second part, and the mother, Elizabeth, as party of the third part. The primary purpose as expressed therein is “that suitable and proper provision be made for the support and maintenance ” of the mother after the father’s death. The father then was 89 or 90 years old; the mother was then 67. The agreement acknowledged that the children were the owners of the stock of three named corporations and provided that in consideration of the agreement of the father and of the mother, each to constitute the children 1 ‘ as their respective residuary legatees in any Last Will and Testament, that they, or each of them, shall execute ’ ’, the children, out of the income of the three corporations, would pay to the mother the difference between the income the mother would receive annually from the father’s estate and from certain listed properties of her own and $15,000 per annum. In other words, if the income from the mother’s property listed in Schedule A of the agreement plus the income she received from the father’s estate did not equal $15,000 a year, the children would make up the difference. As it developed, the mother died on November 7, 1956 and was survived by the father who died on August 27, 1960. It is apparent that the parties did not expect the mother to predecease the father who was 22 years older. This does not, however, affect the validity of the agreement. The consideration is the assumption of an obligation that might well have been substantial even though it turned out otherwise 3% years later upon the mother’s death. Accordingly, the agreement is valid and the first and second affirmative defenses of lack of consideration and failure of consideration asserted by defendants in their answer are without merit. The other affirmative defenses may, likewise, be quickly disposed of ; the fifth affirmative defense that the Surrogate’s Court has exclusive jurisdiction is invalid as a matter of law. While the Surrogate’s Court has jurisdiction, the Surrogate, in this matter, declined it. The fourth affirmative defense merely asserts that the will and codicils claimed by defendants to be violative of the agreement are not violative. This creates no additional issue as that issue was raised by the denials of the allegations of the complaint and cross complaint. The only affirmative. *148 defense that requires any discussion is the third, which asserts that “ the plaintiffs waived, abandoned and rescinded ” the agreement.
There is no proof whatsoever that the children waived, abandoned or rescinded it. The only proof introduced on this subject established that only one of the four children knew of the making of the first codicil; that he protested to the father and that none of the children had knowledge of the making of the second and third codicils. The fact that they chose not to contest a few small legacies — even though they considered them violative of the agreement — is not a waiver, abandonment or rescission of the agreement so far as it affects the two bequests which are complained of.
Now we come to the main and decisive issue, namely, are the bequests to Yeshiva University and to Edna G-. Katz set forth in the three codicils violative of the agreement? The children assert that they are. Their position, as set forth by them in their pleadings and in their briefs is that the intent of the agreement is that, after providing for the mother, the father would give the whole of the rest, residue and remainder of his estate to the children as it was at the time of the making of the agreement. Their contention is that any provision by the father in his will or codicils by way of gift, devise or bequest other than for the mother’s support is violative of the agreement. Since on December 10,1956, when the father’s will was made, the mother was already dead one month, then a provision for anyone other than the four children of the entire estate would violate the agreement, if their contention is correct. Yet the will does make specific bequests in paragraphs Fourth to Tenth inclusive to grandchildren, a brother, an employee and several charities. These total $26,000 plus $1,000 to each grandchild surviving. These are called “ minor bequests ” and are not complained of and, in fact, have been paid by the executors. The will does leave the rest, residue and remainder of the considerable estate to the four children and the plaintiffs do not seek to disturb the will and the specific bequests mentioned therein.
It is clear to me that decedent intended to have the right to make some bequests and that the other parties to the agreement knew this and agreed to it. This is borne out by the prior will of 1954 and by the will of December 10,1956 admitted to probate.
As previously stated, bequests provided for in the last will have not been questioned and have, in fact, been paid, as has an increase from $10,000 to $15,000 in the bequest to decedent’s .secretary, provided fop in the second codicil. These are explained *149 as being minor bequests, voluntarily paid, but I do not regard them as such. They total $33,000.
The construction of any agreement is a search for the intent of the parties, as expressed in the entire agreement. However, a secret intent other than the intent expressed or fairly to be inferred from the writing may not prevail (Mencher v. Weiss, 306 N. Y. 1, 7); nor may the court make a new contract under guise of interpreting the contract (Heller v. Pope, 250 N. Y. 132, 135).
The decedent did in fact constitute the children residuary legatees under the will and codicils admitted to probate. If we were confined to the dictionary definition of “residuary legatee ”, it would satisfy the agreement of March 17,1953 even though in fact all of decedent’s property had been disposed of by specific bequests. I do not believe any such result was intended by the parties, nor is such a construction justified upon consideration of the entire instrument. Courts avoid a construction which gives one party an unfair and unreasonable advantage over the other (Fleischman v. Furgueson, 223 N. Y. 235, 241) or that will place one of the parties at the mercy of the other (Simon v. Etgen, 213 N. Y. 589, 595). On the other hand, I do not find that the agreement prohibits the decedent from making any bequest other than for the mother’s support, as contended by plaintiffs.
I find that the parties intended by the language ‘1 that each would constitute ’ ’ the chcildren ‘ ‘ as their residuary legatees ’ ’ that the children would thereby substantially benefit, but that the father might otherwise make bequests to charity and others as he desired. It is a question of degree. If the father had bequeathed most of his estate to others, it might be violative of the agreement as thwarting its purpose. However, here we have a gross estate of over $890,000 and a net estate before taxes of at least $767,000. Specific bequests of $33,000 reduced the estate before taxes to $734,000. If the charitable bequests complained of are paid, they amount to about $190,000. Thus, approximately two thirds of the net estate before taxes goes to the children as residuary legatees, even if all the legacies provided for in the will and in the codicils are honored. While Federal and State estate taxes of approximately $157,000 will reduce the net value of the residuary estate going to the children to approximately $375,000, that hardly can be considered a nominal or technical residuary estate. This is not a situation similar to that in Morgan v. Sanborn (225 N. Y. 454), where the Court of Appeals reversed a determination by the Appellate *150 Division to the effect that a requirement that the property be left to next of kin of husband and wife could be satisfied by a nominal recognition of appellants as such next of kin. Plaintiffs rely upon the Morgan case, but I find it entirely different from the case before me. Furthermore the agreement sought to be enforced by plaintiffs is a contract of a negative character in derogation of testator’s right to dispose of his property as he saw fit. Such agreements are carefully scrutinized by the courts to prevent fraud on the testator and must be in writing (Personal Property Law, § 31, subd. 7). There is, of course, a writing here, but the plaintiffs have the burden of establishing that the agreement as written is as restrictive as they contend and that the codicils violated it. This they have failed to do.
It should also be pointed out that the agreement in question was drafted by one of the sons, a lawyer, in co-operation with his sister’s husband, also a lawyer. No provisions were inserted specifically forbidding the father from making dispositions of his property. Had the parties intended the drastic limitation against the right of decedent to dispose of his property, certainly more effective language than that employed would have been used. While it may be that the children hoped that the father would leave substantially all of his estate to them, after providing for the mother, there is no such provision in the agreement as I construe it and they took the risk that he might make some bequests even of substantial size, so long as he did not thwart the purpose of the agreement.
Upon all the proof before me, I find that neither the will nor the codicils complained of are violative of the agreement of March 17, 1953; that defendants Yeshiva University and the Attorney-General are entitled to judgment dismissing the complaint and the cross complaint on the merits, without costs.